## Cas No. 7,333.

The JOHN & ALBERT.

BETHEL et al. v. The JOHN & ALBERT.

[4 Adm. Rec. 534.]

District Court. S. D. Florida. Nov., 1851.

T. R. Mallory, for libelants.
Wm. R. Nackley, for respondent.

MARVIN, District Judge. This is a libel for salvage. The principal facts of the case may be briefly stated as follows: The ship, while on a voyage from New York to Appalachicola, in ballast and with about two hundred bales of hay, on the night of the 1st of November, 1851, ran ashore upon a reef of coral rocks, known as "Pellican Shoals," situated on the edge of the Gulf Stream, about fifteen miles distant from Key West. The ship laboring considerably, and the masses of coral breaking away underneath, she became imbedded in them. She lay in seven and nine feet of water, she

drawing ten feet forward and ten feet three inches aft. The libellants, being the crews of four wrecking vessels, arrived at the ship on the morning of the 2d of November, and, being employed by the master of the ship to assist him in getting the ship off, they proceeded to carry out an anchor, and plant it astern, and to throw overboard ballast, to lighten the ship. Continuing to throw overboard ballast, at 5 o'clock p. m., it being high water and finding they could not heave the ship off, they carried out a second heavy anchor. During the night they hove overboard more ballast, and hoisted the hay out of the lower hold, placing it between decks, and moving it forward to lighten the ship aft. In the morning they carried out and planted a third anchor, belonging to the schooner Victor, and they threw overboard more ballast, passing it out through the ballast portholes by hand, which method of removing the ballast they were obliged to adopt in consequence of the careening of the ship. On the morning of the 4th they sent down the ship's topgallant and royal yards and topgallant masts, fearing that, in consequence of the removal of so much ballast, the ship would not stand upright, when she came off, with these yards and masts aloft. They then hove overboard more ballast, and continued at this labour until about 5 o'clock in the afternoon, when having thrown overboard about one hundred and twenty tons of ballast, and it being high water, the ship began to move. The wind blowing a heavy norther, they set all sail, and manned the windlass, and by the means of the sails, and heavy strains upon the anchors, they succeeded, at about 7 o'clock, in getting the ship afloat, and bringing her into this port the next day. It appears, from an examination of the ship in this port, that her keel and bottom planks are very chafed and worn off by the rocks; and on an appraisement it appears that, although considerably injured, she is still worth the sum of $20,000. I think no reasonable doubt can be entertained that the ship would have been totally lost but for the efforts and labours of the libellants, thirty-four in all, with four wrecking vessels. It appears, too, that there were not more men employed in this service than were fairly necessary. The service was performed, too, with energy and skill, and involved considerable labour and some peril and exposure on the part of the salvors and their vessels.

Under these circumstances, the claim of the salvors is one of much merit. The law not having laid down any rule by which to determine the amount of salvage in any case, such amount is left to be fixed by the tribunals of justice, not arbitrarily, but upon a full consideration of all the facts, and with a due reference to previous decisions and sound commercial policy.

To enable me to form a satisfactory opin-

ion as to the amount of salvage I ought to decree in the present case, I have examined a considerable number of cases heretofore decided in this and in other courts, some of which it may be well to refer to. The first case I shall notice is that of The Tennessee [unreported], decided by Judge Webb in 1832. This ship, bound from New York to New Orleans, laden with a cargo estimated to be worth between seventy and one hundred thousand dollars, ran ashore off Long Key. She was assisted by two wrecking vessels and their crews, and lightened about twelve inches; and forced off at high water by means of the sails. The court decreed about three thousand dollars as a reasonable compensation for the services rendered. The judge considered the ship and cargo in danger, but not in imminent peril. The case of The Emporium [unreported] was decided in 1833. This ship was from Boston, bound to New Orleans, laden principally with ice. She ran ashore on Collins' Patches, and lay in a foot and a half less water than her actual draught. She was lightened by the crew of the sloop Isabella, Appleby, master, and heaved off the reef by her anchors. Immediately after the ship was relieved the wind commenced to blow hard, and increased in violence for two days. The ship and cargo were valued at $32,000, and sixteen per cent. thereof, or $5,120, were decreed for salvage. The case of The Ella Hand [Case No. 4,369] was decided in 1837. This ship ran ashore on Bird Key Shoal at the Tortugas. She lay in ten feet water, drawing twelve feet. The weather was squally, and the sea rolled in heavily, pressing her further on shore. Four of the large wrecking vessels and crews were concerned in lightening and relieving the vessel. They carried out two anchors, and hove her off. The ship and cargo were appraised at $33,-200. The court decreed $7,500 salvage, or near twenty-two and a half per cent. The shares of the men amounted to $68.50. The case of the Mexican Naval Brig Independence [unreported], Kelly, master, was decided in 1836. This brig got ashore on the Sombrero Reef. She lay in eleven feet, drawing fourteen feet, with her rudder pintles broken and rudder unhung. Three of the large wrecking vessels were concerned in relieving her. They lightened the vessel by loading the schooner United States, of seventy tons burthen, with beef, pork, cordage, and other heavy articles, and forced her off the reef by means of her sails. They then hung her rudder, and brought her to this port. The vessel and cargo were valued at $23,000. The salvage decreed was $5,000. The men's shares amounted to $64. The next case I shall mention is that of The American & Cargo [unreported]. This ship got ashore off Sugar-Loaf Key, and was got off by the officers and crew of the revenue cutter Dexter and the crews of the regular wrecking vessels. The ship was lightened by load-ing the two wrecking vessels, and hove off by her anchors. The ship and cargo were valued at $45,000. The judge said: "Had the service been rendered solely by the regular wreckers, sixteen per cent., or $7,200, would be allowed as salvage; but, the principal services being performed by men belonging to a vessel of the United States, he decreed $6,000 for salvage." The case just mentioned is not unlike, in many particulars, the case of The Russell Glover [unreported], decided in this court in 1846. This ship, laden with ice, got on shore on Sombrero reef, and was lightened and hauled off by the crews of two pilot boats, engaged also in wrecking, and the crew of the revenue cutter Legan. She was badly ashore, sustained much injury, and was in great danger of total loss. The ship was valued at $10,500. The court said, had all the salvors been regular wreckers, $5,000 would be a reasonable salvage; but, acting on the principle decided in the case of The American, of allowing less salvage to men attached to national vessels, the court decreed $3,750. The case of The Suviah [unreported] was decided in 1840. This ship was ashore on Pickle's Reef, and was in great danger of total loss. She was relieved by four wrecking vessels, with their crews, lightened, and hove off. The ship and cargo were valued at $34,977. The one quarter thereof, or $8,744, were decreed for salvage. The men's shares amounted to $58. The case of The Abellino [unreported] was decided in 1850. This ship, laden with ice, got ashore on the Alabamian Shoal, and was relieved by six wrecking vessels and crews. They carried out an anchor, lightened the vessel of 75 or 100 tons of ice, and hove the ship off. The weather was bad and sea rough. The ship was in great danger, and the court said "there could be no reasonable doubt that the vessel would have been lost, but for the services of the wreckers." The ship was valued at $26,200. The salvage decreed was $6,550, being the one-quarter of the value. The shares of the men amounted to $34 each.

It may be learned, from the cases I have cited, and from many others decided in this court in awarding salvages, and to which I refer in the records and rolls, that the court, in awarding salvage, has steadily had in view, at all the different periods of its history, the idea of a fair and reasonable compensation, under all the circumstances, for the service done, rather than the idea of any particular pro rata amount; that the proportional rate has been diminished with the increased value; and e converso, other things being equal, that, acting upon this general idea, it has resulted, as a matter of fact, that there have been but few cases decided, even where the property was in much peril and of considerable value, in which the vessel's share has exceeded $1,400, or the men's shares $70 each. There are cases when the shares of the vessels and men exceed these amounts, as in The Ajax [Case No. 117]; The Amer-

ica [Id. 279]; The Euphrasia [Id. 4,545]; The Brewster [Id. 1,852]; and others; but it will be found, on examination, that even where the value of the property is large, and the danger great, the shares oftener fall short of the sums than they exceed them. When the value of the property has been small or the danger not great, the shares have fallen much below these sums; and as a general rule, admitting as exceptions, the shares rarely come up to these sums I have mentioned. In administering the law of salvage in this court, there is great danger of departing, little by little, and imperceptibly, from the principles, proportions, and amounts of salvage settled and given in years past in this court, without a frequent reference to, and examination of, the older decisions. Every such departure is to be deprecated on many accounts. The general rates and amounts of salvages allowed in this court should neither be increased or diminished. Any increase in the rates would unreasonably stimulate and encourage the business of wrecking, and enlist more men in the business than it can fairly support, or than the interests of commerce and humanity require; and such stimulation would inevitably, in the end, prove disastrous and ruinous in its consequences to all persons engaged in the business. On the other hand, any considerable diminution of the rates would be unjust to the persons already engaged in the business, and injurious to the interests of commerce. An even and steady course should be pursued.

To return to the case immediately under consideration. It will be seen, from the statement of facts I have made, that the present case is one of much merit, calling for a compensation to the salvors fully equal in amount to the salvages heretofore decreed in the most meritorious cases. In many particulars it will compare with the cases above mentioned. In its important feature it does not differ from the cases of The Ella Hand, The Independence, and The Abellino [supra]; and, comparing the case with those, I think that the sum of $6,000 will be a reasonable compensation in the present case. This amount will make the shares of the men $65.21 each. It is therefore ordered, adjudged, and decreed that the libellants have, recover, and receive the sum of $6,000 in money of account in the United States, in full compensation for their services rendered the said ship John and Albert, as alleged in their libel; and that upon the payment thereof, and the costs and expenses of this suit, the marshal restore said ship to the master for and on account of whom it may concern.